# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KHADIJAH S.,[1]

       Plaintiff,

     v.

                           **Case No. 2:22-cv-6912**
                           **Magistrate Judge Norah McCann King**

CAROLYN COLVIN,
Acting Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Khadijah S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Carolyn Colvin, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

Plaintiff filed her applications for disability insurance benefits and supplemental security income on November 16, 2020, and December 5, 2020, respectively, alleging that she has been disabled since March 3, 2020. R. 89–90, 107–08,  248–75. The applications were denied initially and upon reconsideration. R. 145–54, 158–73. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 174–75. ALJ Kenneth Ayers held a hearing on November 22, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 47–79. In a decision dated December 9, 2021 the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 3, 2020, Plaintiff's alleged disability onset date, through the date of that decision. R. 27–41. That decision became final when the Appeals Council declined review on September 29, 2022. R. 8–13. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 11, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On August 14, 2023, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

3

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016). The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 35 years old on her alleged disability onset date. R. 40. Plaintiff met the inured status requirements of the Social Security Act through June 30, 2023. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 3, 2020, her alleged disability onset date, and the date of the decision. R. 29–30.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease of the right knee and status post total knee replacement, internal derangement of the right knee and status post arthroscopy, obesity, depressive disorder, anxiety disorder, and drug abuse disorder. R. 30. The ALJ also found that Plaintiff's thyroid nodules were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 30–32.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 32–39. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a router. R. 39.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*, approximately 6,113  jobs as a mail clerk; approximately 267,048 jobs as a cashier II; approximately 2,040 jobs as an information clerk—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 40–41. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social

Security Act from March 3, 2020, her alleged disability onset date, through the date of the decision. R. 41.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 12. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Rachael Felsenfeld, Psy.D.

On February 18, 2021, Rachael Felsenfeld, Psy.D., conducted a consultative psychiatric examination of Plaintiff. R. 512–15. Plaintiff had no history of psychiatric hospitalizations or outpatient treatment. R. 512. Upon mental status examination, Dr. Felsenfeld reported as follows:

> MENTAL STATUS EXAMINATION: Mrs. S[.] was cooperative. Manner of relating was adequate as she answered questions posed to her. She maintained eye contact. She did not present as under the influence of substances.
>
> APPEARANCE: Mrs. S[.] appeared her stated age. Mode of dress was appropriate and casual. Personal hygiene and grooming appeared to be fair. Her hair was braided and shoulder length.
>
> SPEECH: Speech was fluent. Quality of voice was clear. Expressive and receptive language were intact.
>
> THOUGHT PROCESSES: Coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting.

8

AFFECT: Mildly anxious

MOOD: Dysthymic

ORIENTATION: She was oriented.

ATTENTION AND CONCENTRATION: Appeared to be fair. She was able to do simple calculations. On serial 3's, she stated, "20, 17, 14, 11, 8, 5, 2." She was able to recall 6 digits forward and 5 digits backward.

RECENT AND REMOTE MEMORY SKILLS: Appeared to be mildly impaired. She was able to recall 3 out of 3 words immediately, but only 2 out of 3 words on a delay. Information provided about her personal history was good.

COGNITIVE FUNCTIONING: Intellectual functioning is likely Average. General fund of information was good.

INSIGHT: Appeared to be fair.

JUDGMENT: Appeared to be fair.

R. 513. Dr. Felsenfeld noted Plaintiff's reported daily activities:

DAILY LIVING: She is able to dress and bathe herself. She cooks, cleans, and does the laundry. She does the shopping. She is able to manage the money. If she has a car, she will drive but does not drive now because she does not have a car. She will take public transportation by herself. She socializes daily. During the day she is with her children for school. She will cook, read, and do puzzles. She can't do as much as she wants to do. She tries to take care of her health.

R. 514. Dr. Felsenfeld concluded that Plaintiff's psychiatric symptoms caused some limitations, but found that Plaintiff could nevertheless, *inter alia*, follow and understand simple directions and maintain a regular schedule:

The claimant shows evidence of limitations to maintain attention and concentration, perform complex tasks independently and appropriately deal with stress. Difficulties are caused by psychiatric symptoms. *She seems able to follow and understand simple directions/instructions, learn and perform simple tasks independently, make appropriate decisions, maintain a regular schedule, and relate adequately with others.*

9

The results of the present evaluation appear to be consistent with psychiatric problems, and these problems may interfere with the claimant's ability to function on daily basis.

*Id*. (emphasis added). Dr. Felsenfeld diagnosed unspecified anxiety disorder with a guarded prognosis. *Id*. She recommended that Plaintiff undergo a psychiatric evaluation, consider therapy, and "[m]edical follow up on an as needed basis." *Id*.

### B.   Ebere Diribe, APN, MSN

On June 14, 2021, Ebere Diribe, APN, MSN, Plaintiff's treating provider, completed a three-page, check-the-box, and fill-in-the-blank form entitled, "Mental Capacity Assessment." R. 554–56. In assessing Plaintiff's ability to perform work-related activities on a day-to-day basis in a regular work setting, Nurse Diribe used the following terms to indicate Plaintiff's degree of limitation resulting from psychological factors: none (meaning that Plaintiff is "able to function, this area independently, appropriately, effectively, and on a sustained basis"); mild (meaning that Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited"); moderate (meaning that Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"); marked (meaning that Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited"); extreme (meaning that Plaintiff is "not able to function in this area independently, appropriately, effectively, and on a sustained basis"); and unknown (meaning that Nurse Diribe is "[u]nable to assess limitations based on examination or review of medical records"). R. 554 (advising further that "[a]*n 'extreme' impairment is very severe, and will not apply to most patients. Please mark 'Extreme' only when well supported by clinical evidence*") (emphasis in original). Nurse Diribe left blank the entry for "Diagnoses[.]" *Id*. In the area of understanding, remembering, or applying information, she opined that Plaintiff had a

10

moderate limitation in her ability to sequence multi-step activities, but marked the box "None" in responding to whether Plaintiff had any limitation in her ability to follow one- or two-step oral instructions to carry out a task; her ability to recognize a mistake and correct it, or identify and solve problems; or her ability to use reason and judgment to make work-related decisions. *Id*. In the area of concentration, persistence, or maintaining pace, Nurse Diribe opined that Plaintiff had extreme limitations in her ability to work at an appropriate and consistent pace, or to complete tasks in a timely manner; to sustain an ordinary routine and regular attendance at work; and to work a full day without needing more than the allotted number or length of rest periods during the day; that Plaintiff had moderate limitations in her ability to initiate and perform a task that Plaintiff knows how to do and to work closely with others without interrupting or distracting them; and that Plaintiff had a mild limitation in her ability to ignore or avoid distractions while working. R. 555. In the area of adapting or managing oneself, Nurse Diribe opined that Plaintiff had a marked limitation in her ability to make plans independently of others; that Plaintiff had moderate limitations in her ability to adapt to changes and set realistic goals; and that Plaintiff had no limitation in her ability to manage psychologically based symptoms, in her ability to maintain personal hygiene and attire appropriate to a work setting, and in her ability to be aware of normal hazards and take appropriate precautions. *Id*. Nurse Diribe marked the box "Unknown" when asked about Plaintiff's ability to distinguish between acceptable and unacceptable work performance. *Id*. In the area of interacting with others, Nurse Diribe opined that Plaintiff had a mild limitation in her ability to respond to requests, suggestions, criticism, correction, and challenges, but marked the box "None" in responding to whether Plaintiff had limitations in her ability to cooperate with others or to ask for help when needed, in her ability to handle conflicts with others, in her ability to understand and respond to social cues, and in her

ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. R. 556. Plaintiff could manage benefits in her own best interest. *Id*.

On that same day, Nurse Diribe also completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Physical Assessment." R. 557–58. She listed Plaintiff's diagnosis as "Chronic Right Knee pain[.]" R. 557. Nurse Diribe opined that Plaintiff's symptoms were severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks. *Id*. Asked to identify "the side effects of any medications which may impact their capacity for work, i.e. dizziness, drowsiness, stomach upset, etc.[,]" Nurse Diribe responded, "drowsiness, dizziness, constipation, hypotension[.]" *Id*. She answered in the affirmative when asked whether Plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch break, and the typical 15-minute break in the afternoon. *Id*. According to Nurse Diribe, Plaintiff could walk one block without rest or significant pain. *Id*. Asked to indicate the total number of hours that Plaintiff could sit and stand/walk in an 8-hour workday, Nurse Diribe circled the number zero. *Id*. She further opined that, in an 8-hour workday, Plaintiff would need to take unscheduled breaks lasting 15 to 20 minutes every 30 minutes or less. *Id*. Nurse Diribe also opined that Plaintiff could frequently (meaning one-third to two-thirds of an 8-hour workday) lift and carry less than 10 pounds and occasionally (meaning less than one-third of an 8-hour workday) lift and carry 20 pounds. *Id*. Plaintiff had no limitations in performing repetitive reaching, handling, or fingering. *Id*. Plaintiff was likely to be absent from work more than four times per month as a result of her impairments or treatments. R. 558. Nurse Diribe answered in the affirmative when asked whether Plaintiff's impairments (meaning physical impairments plus

12

any emotional impairments) were reasonably consistent with the symptoms and functional limitations described in this evaluation. *Id.*

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, stand and walk for a combined total of four hours in an eight-hour workday, and push and pull as much as she can lift and carry. She can climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds, balance as defined in the Selected Characteristics of Occupations of the DOT occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. She can never work at unprotected heights or around hazardous, moving mechanical parts and can work in humidity, wetness, and extreme cold occasionally. She is able to perform simple, routine tasks and make simple work-related decisions.

R. 32–33. Plaintiff argues that substantial evidence does not support this RFC determination because the ALJ failed to properly consider the opinions of Nurse Diribe. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 15–29; *Plaintiff's Reply Brief*, ECF No. 12, pp. 3–7. For the reasons that follow, this Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In finding that the ALJ had the RFC for a limited range of light work, the ALJ detailed years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*, diagnostic imaging of the right knee after a fall injury in June 2019 that showed a possible acute avulsion fracture, as well as suprapatellar joint effusion and tricompartmental osteoarthritis; evidence that Plaintiff sought treatment for right knee pain, reporting worsening pain in March 2020; evidence that, in September 2020, Plaintiff underwent surgery for right knee arthroscopic partial lateral meniscectomy and chondroplasty of the patella; evidence that, in a post-operative follow-up visit in December 2020, Plaintiff reported that she was feeling pretty good and was participating in physical therapy, and that care providers characterized Plaintiff as doing well; evidence that, during a follow-up physical exam of the right knee in February 2021, there was tenderness, valgus deformity, reduced flexion, and joint line pain with extension, but it was also noted that Plaintiff sat comfortably, and demonstrated near full extension of the right knee, ligamentous stability, negative anterior and posterior drawer tests, and stability on varus and valgus stress; evidence that, in March 2021, Plaintiff underwent a procedure for right knee Mako unicompartmental lateral arthroplasty, that care providers had prescribed a cane for temporary use during the post-operative recovery period and that, following this surgery, providers observed Plaintiff using a cane during physical therapy treatment; post-operative diagnostic

imaging of the right knee that showed a new lateral compartment hemiarthroplasty in near-anatomic alignment without acute complication, small suprapatellar knee joint effusion, and mild residual osteophytosis at the patellofemoral joint and medial compartment consistent with mild degenerative change; diagnostic imaging of the right knee in April 2021 that showed a stable right knee hemiarthroplasty with stable mild joint space narrowing at the patellofemoral compartment and medial compartment consistent with mild degenerative changes, suprapatellar joint effusion, and diffuse soft tissue swelling; evidence that Plaintiff participated in post-operative physical therapy, including gait retraining using an assistive device; evidence that, during a post-operative visit in early April 2021, care providers noted that Plaintiff was doing very well, that she reported that she was able to climb stairs with limited pain, and that physical exam showed good range of motion of the right knee; evidence that, during an emergency department visit for an unrelated condition later in April 2021, a physical exam showed no joint swelling, full strength in all extremities, and grossly intact sensation; treatment notes from a physical therapy session in June 2021 indicating that Plaintiff demonstrated significant improvement with range of motion and ambulatory quality; and diagnostic imaging of the right knee in September 2021 that showed mild fullness of the suprapatellar fossa suggestive of small joint effusion similar to the prior study, but also unremarkable medial tibiofemoral and patellofemoral compartments. R. 34–35. In light of this evidence, the ALJ explained Plaintiff's physical RFC, as follows:

> These findings generally demonstrating improvement of the claimant's knee condition with surgery and physical therapy, intact strength and sensation of the lower extremities, and an ability to climb stairs are inconsistent with the claimant's allegations of extreme limitations in standing, walking, sitting, and lifting. Rather, the claimant's knee impairments limit her ability to stand, walk, and lift and carry heavy items, and impose some postural and workplace environmental limitations. However, these impairments do not preclude the claimant from performing a

limited range of light work with the additional standing, walking, postural, and
environmental limitations set forth in the residual functional capacity.

The claimant has obesity, as demonstrated by a height of five feet and 11 inches,
and weight of 265 pounds, which corresponds to a body mass index of 37 (15F/8).
In accordance with Social Security Ruling 19-2p, the undersigned has considered
the claimant's weight, including the impact on the claimant's ability to ambulate as
well as other body systems, in evaluating the claimant's residual functional
capacity. The undersigned has considered the contribution of obesity to the
claimant's overall functioning due the claimant's knee impairments, in the
assignment of light exertion with additional standing, walking, postural, and
environmental limitations.

R. 35.

The ALJ also detailed years of record evidence regarding Plaintiff's mental impairments,

including, *inter alia*, Plaintiff's allegations that she does not finish what she starts, has a limited

ability to pay attention, and experiences anxiety that interferes with her ability to handle stress,

and her hearing testimony that she feels defeated most of the time, sometimes does not want to

get out of bed, feels like there is a lot on her, worries a lot when she cannot do something for her

children, does not know who will help her, and has panic attacks, and has some days where she

needs help to calm down even though she takes medication for her mental health symptoms;

evidence that Plaintiff sought treatment for depression and anxiety in September 2021, telling

care providers that she was experiencing panic attacks, constant worry, and lack of motivation;

evidence that Plaintiff's care providers prescribed medication for depression and anxiety and that

Plaintiff participated in individual counseling; mental status exams that at times showed labile,

irritable, anxious, sad, and angry mood, but which also generally showed normal grooming,

appropriate affect, good eye contact, normal speech, logical thought process, fully oriented

cognition, intact memory, good concentration and focus, and fair to good insight and judgment,

appropriate mood and affect, alert and oriented cognition, calm and cooperative attitude, and

normal judgment; no evidence of a need for emergency or inpatient psychiatric treatment; and

16

Dr. Felsenfeld's psychiatric consultative examination in February 2021, which showed mildly anxious affect and dysthymic mood but also normal eye contact, appropriate dress, fair grooming and hygiene, intact expressive and receptive language, normal speech, and coherent and goal-directed thought processes, fair attention and concentration, only mildly impaired recent and remote memory, estimated average intellectual functioning, good general fund of knowledge, and fair insight and judgment. R. 35–36. The ALJ went on to explain Plaintiff's mental RFC in light of this evidence:

> Nonetheless, the claimant's anxiety and depression are accounted for in the limitation to work involving simple, routine tasks and simple work-related decisions, as found in the residual functional capacity. In particular, the limitation to simple, routine tasks and simple work-related decisions accounts for the claimant's limitation in both the ability to understand, remember or apply information and the ability to concentrate, persist, or maintain pace because work of this nature imposes lesser demands in both of these mental functional domains. However, greater mental limitations are not warranted by the generally mild mental status exam findings and routine mental health treatment in the record (1F/59; 2F/13, 21, 24, 20; 4F; 11F/144, 53; 18F/4-5, 6, 8-9, 12-13, 14-15, 17-19).

> The residual functional capacity is also consistent with the claimant's activities of daily living. For instance, the claimant reports that she prepares complete meals multiple times a day, does cleaning and laundry, shops in stores and by computer, socializes daily, and can pay bills, count change, handle a savings account, and use a checkbook or money orders (3E). Further, the claimant told care providers in October 2021 that she was able to drive a car, run errands, and take her children to the movies and an arcade (18F/12). The claimant also told the psychological consultative examiner in February 2021 that she takes public transportation independently, socializes daily, reads and does puzzles as hobbies, and can cook, clean, do laundry, and handle money (4F/3). These activities require an ability to stand and walk for short stretches, lift and carry light items, and complete basic, familiar mental tasks. Thus, a limitation to light work with additional standing, walking, postural, workplace environmental, and mental limitations adequately accounts for the claimant's reported range of physical and mental limitations.

R. 36–37. The ALJ also found Dr. Felsenfeld's opinion "mostly persuasive[,]" explaining as follows:

> Rachael Felsenfeld, PsyD, who conducted a psychological consultative examination on February 18, 2021, opined that the claimant has limitations with

17

maintaining attention and concentration, performing complex tasks independently, and appropriately dealing with stress, which may interfere with her ability to function on a daily basis, but she is able to follow and understand simple directions/instructions, learn and perform simple tasks independently, make appropriate decisions, maintain a regular schedule, and relate adequately with others (4F/3). The undersigned finds this opinion mostly persuasive because although it is based only on a one-time evaluation, to the extent that it suggests a limitation to unskilled work as stated in the residual functional capacity, it is well-supported by this doctor's mental status exam findings, which do not suggest more extensive mental functional limitation (4F). It is also consistent with the record as a whole, which likewise does not suggest more extensive mental functional limitation, including the generally mild mental status exam findings and routine mental health treatment in the record (1F/59; 2F/13, 21, 24, 20; 4F; 11F/144, 53; 18F/4-5, 6, 8-9, 12-13, 14-15, 17-19).

R. 38–39. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving and "work[ing] around the house" "require at least some . . . mental concentration"); *Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("Her ability to drive, prepare meals, manage funds, shop, and take a cruise also contradicted her claims that she had difficulty concentrating, remembering information, and engaging in social activities."); *cf. Long v. Kijakazi*, No. 20-CV-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that the ALJ provided a valid explanation for finding that the claimant is capable of performing simple tasks where the ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations[,]" "emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping[,]" and the claimant's "progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory").

Plaintiff challenges the ALJ's RFC determination, contending that the ALJ erred in evaluating Nurse Diribe's opinion regarding Plaintiff's mental impairments. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 18–24; *Plaintiff's Reply Brief*, ECF No. 12, pp. 3–5. In crafting the RFC, the ALJ considered, *inter alia*, this opinion, but found it unpersuasive, explaining as follows:

> Dr. [sic] Diribe further opined that the claimant has extreme limitation in the ability to work at an appropriate and consistent pace or complete tasks in a timely manner, sustain an ordinary routine and regular attendance at work, and work a full day without needing more than the allotted number or length of rest periods during the day; has marked limitation in the ability to make plans independently of others; has moderate limitation in the ability to sequence multi-step tasks, initiate and perform a task she knows how to do, work close to or with others without interrupting or distracting them, adapt to changes, and set realistic goals; has mild limitation in the ability to ignore or avoid distractions while working and respond to requests, suggestions, criticism, correction, and challenges (8F). The undersigned finds these opinions unpersuasive because they are not supported by any referenced objective medical evidence or an explanation for why the evidence directs the stated limitations (8F). They are also inconsistent with the record as a whole, which does not demonstrate such extensive mental functional limitation, including the generally mild mental status exam findings and routine mental health treatment in the record (1F/59; 2F/13, 21, 24, 20; 4F; 11F/144, 53; 18F/4-5, 6, 8-9, 12-13, 14-15, 17-19).

R. 39. The Court finds no error with the ALJ's consideration in this regard. *See Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *Plummer*, 186 F.3d at 429 (noting that an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided"); *Elzer v. Comm'r of Soc. Sec.*, No. CV 23-1339, 2024 WL 4920005, at *1 n.1 (W.D. Pa. Sept. 23, 2024) ("[T]he ALJ adequately considered the consistency and supportability of Dr. White's opinion [that the ALJ ultimately found unpersuasive], as she explained it was not consistent with the record, showing

that Plaintiff was fairly independent and stable, and was not supported by Dr. White's mental status examination, which was generally normal and indicated abnormalities only in mood and affect."); *cf. Foor v. Berryhill*, No. CV 18-64, 2019 WL 1296882, at *4 (W.D. Pa. Mar. 21, 2019) (finding that a lack of inpatient psychiatric treatment was an "appropriate bas[is]" for discounting treating opinion that the claimant suffered from extreme mental limitations).

Plaintiff, however, complains that Nurse Diribe's opinion regarding Plaintiff's mental limitations "is supported by" that provider's treatment at Consolidated Health Care. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 19 (citing R. 340, 360) (identifying medication prescribed by Consolidated Health Care). Plaintiff has not persuaded the Court that this issue requires remand. As detailed above, the ALJ expressly considered that Plaintiff took medication for her depression and anxiety, but the ALJ explained why other evidence in the record nevertheless rendered the nurse's opinion unpersuasive. R. 36, 39. Plaintiff's insistence that evidence of prescription medication for her mental impairments undermines the ALJ's consideration of Nurse Diribe's opinions of mental limitations is an implicit request that this Court reweigh the evidence, which this Court cannot do. *See Messina v. Comm'r of Soc. Sec.*, 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff also argues that the ALJ failed to "appropriately" or "properly" develop the record, a failure that also undermines the validity of the ALJ's evaluation of Nurse Diribe's opinions. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 19–20; *Plaintiff's Reply Brief*, ECF No. 12, p. 4. Plaintiff specifically argues that "the agency sought, but failed to obtain, additional

records from Consolidated Health Care." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 19

(citing R. 162 (advising in the disability reconsideration notice dated July 12, 2021, that the

agency was "unable to obtain additional medical and non-medical reports from[,]" *inter alia*,

"CONSOLIDATED CARE")). According to Plaintiff, the ALJ "relied on a gap in records he

knew to exist to reject the opinion of a treating provider" and insists that "it cannot be said that

the ALJ sufficiently filled this evidentiary gap to satisfy his obligation to appropriately assess the

supportability of APN Diribe's opinion." *Plaintiff's Reply Brief*, ECF No. 12, p. 4. This Court

disagrees.

It is true that "ALJs have a duty to develop a full and fair record in social security cases."

*Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the

claimant to develop the record regarding his or her disability because the claimant is in a better

position to provide information about his or her own medical condition." *Money v. Barnhart*, 91

F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Lynn v. Comm'r of Soc. Sec*., No.

12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013) ("[T]he ALJ does not have a duty

to search for all of the relevant evidence available, because such a requirement would shift the

burden of proof.") (citations and internal quotation marks omitted). "The ALJ's only duty in this

respect is to ensure that the claimant's complete medical history is developed on the record

before finding that the claimant is not disabled." *Money*, 91 F. App'x at 215 (citing 20 C.F.R. §§

404.1512(d), 416.912(d)). That is exactly what happened in this case. In its reconsideration

notice from July 2021, the agency advised that it used medical and non-medical reports from,

*inter alios*, Nurse Diribe, when deciding Plaintiff's claim. R. 162.  The agency acknowledged

that it was unable to obtain additional reports from, *inter alios*, Consolidated Care, but further

advised that "[t]he *reports we received had enough information to evaluate your condition*." *Id*.

(emphasis added). Months later, during the November 2021administrative hearing, Plaintiff's counsel[4] agreed that he had reviewed the record and had no objections to the admission of any of the documents and indicated that he was not awaiting any additional documents. R. 51. In the written decision, the ALJ noted that Plaintiff "submitted or informed" him "about all written evidence at least five business days before the date of the claimant's scheduled hearing[.]" R. 27. At step two of the sequential evaluation, the ALJ found that Plaintiff suffered from, *inter alia*, the severe impairments of depressive disorder and anxiety disorder. R. 30. At step four, the ALJ went on, as detailed above, to consider medical evidence related to Plaintiff's mental impairments, including, *inter alia*, that care providers prescribed medication for Plaintiff's depression and anxiety; that Plaintiff participated in individual counseling; that mental status exams times showed labile, irritable, anxious, sad, and angry mood, but generally reflected normal grooming, appropriate affect, good eye contact, normal speech, logical thought process, fully oriented cognition, intact memory, good concentration and focus, fair to good insight and judgment, appropriate mood and affect, and calm and cooperative attitude; and that there was no indication of the need for emergency or inpatient psychiatric treatment. R. 36. Based on this record, the ALJ had sufficient evidence when, *inter alia*, crafting the RFC and considering Nurse Diribe's opinions. Plaintiff therefore has not persuaded this Court that the "ALJ relied on a gap in records he knew to exist to reject the opinion of a treating provider." *Plaintiff's Reply Brief*, ECF No. 12, p. 4.[5]

---

[4] Attorney Shayan Farooqi represented Plaintiff at the administrative hearing. R. 47; *see also* R. 27 ("The claimant is represented by main representative Bradford D. Myler, an attorney, and was represented at the hearing by attorney Shayan Farooqi.").

[5] In light of this record, Plaintiff's reliance on *Rosa v. Colvin*, 956 F. Supp.2d 617 (E.D. Pa. 2013) is inapposite. In *Rosa*, the plaintiff was proceeding without counsel at the entire administrative level, and the court specifically explained that, under those circumstances, the ALJ had a heightened duty to develop a full and fair record. *Id*. at 619, 622–23. Moreover,

Plaintiff also challenges the ALJ's evaluation of Nurse Diribe's opinion, contending that "the ALJ's overreliance on benign mental status findings is misplaced" and that the ALJ engaged in "classic" cherry picking. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 21–22. Plaintiff specifically argues that Nurse Diribe's opinion is consistent with the record evidence, pointing to evidence from a treating provider, Melissa Duval, LAC, and from consultative examining psychologist Felsenfeld. *Id.* at 22–24; *see also Plaintiff's Reply Brief*, ECF No. 12, pp. 4–5. Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff relies on her own subjective complaints relayed to Ms. Duval, *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 22–23 (citations omitted), but the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted).

---

during the administrative hearing in that case, the ALJ promised the *pro se* plaintiff that the ALJ would obtain the plaintiff's mental health records. *Id.* at 620. However, the ALJ advised in his written decision that he had received no response to his three requests for such records and that he therefore limited his review to only evidence already in record. *Id.* In granting the plaintiff's motion to remand, the court in *Rosa* reasoned that the ALJ had violated the *pro se* plaintiff's right to a full and fair hearing. *Id.* at 624, 626–27.

Plaintiff also points to Ms. Duval's observations, which included anger, sadness, anxiety, and irritable mood. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 23. However, the ALJ expressly considered that the mental status examinations from her individual counseling sessions "at times showed labile, irritable, anxious, sad, and angry mood[,]" but observed that those examinations also showed generally normal findings. R. 36 (citations omitted). Similarly, Plaintiff argues that Dr. Felsenfeld's consultative examination "showed evidence of limitations in her abilities to maintain concentration and attention, performing complex tasks independently, and appropriately deal with stress." *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 23–24 (citing R. 514). Despite these limitations, however, Dr. Felsenfeld nevertheless concluded that Plaintiff "seems able to follow and understand simple directions/instructions, learn and perform simple tasks independently, make appropriate decisions, maintain a regular schedule, and relate adequately with others." R. 514. This opinion is simply not consistent with Nurse Diribe's extreme opinion and, instead, supports the ALJ's RFC for, *inter alia*, performing simple, routine tasks and making simple work-related decisions. R. 33. Notably, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Messina*, 844 F. App'x at 589–90; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Accordingly, the Court finds the ALJ's consideration of Nurse Diribe's opinion regarding Plaintiff's mental limitations to be sufficient and supported by substantial evidence.

In continuing to challenge the ALJ's RFC determination, Plaintiff contends that the ALJ erred in assessing Nurse Diribe's opinion regarding Plaintiff's physical impairments and related limitations. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 24–28; *Plaintiff's Reply Brief*, ECF No. 12, pp. 5–7. The ALJ found this opinion to be unpersuasive, reasoning as follows:

> Ebere Diribe, APN MSN, the claimant's treating care provider, opined that the claimant frequently has symptoms severe enough to interfere with the attention and concentration required to perform simple work-related tasks; would need to lie down during an eight-hour workday in excess of typical breaks; can walk for one block without rest or significant pain; can sit for zero hours and stand/walk for zero hours in an eight-hour workday; needs unscheduled breaks every 30 minutes or less lasting 15 to 20 minutes; can lift and carry less than 10 pounds frequently, 10 to 20 pounds occasionally, and never 50 pounds or more; and would be absent from work more than four times per month (9F). The undersigned finds these opinions unpersuasive because they are not supported by referenced to [sic] objective medical evidence, but rather appear to be primarily based on the claimant's subjective reports of symptoms (9F). They are also inconsistent with the record as a whole, which does not demonstrate such extreme physical limitation, including the treatment notes demonstrating that the claimant's knee condition improved after surgery and with physical therapy, with good right knee range of motion and an ability to [climb] stairs (6F/16; 11F/43, 168).

R. 38. Substantial evidence supports the ALJ's consideration of this opinion. *See Galette*, 708 F. App'x at 91; *Plummer*, 186 F.3d at 429; *Moats v. Kijakazi*, No. 1:20-CV-01554, 2022 WL 1062912, at *6 (M.D. Pa. Apr. 8, 2022) ("[W]e find that the ALJ sufficiently identified inconsistencies between Dr. Bossert's medical opinion and other objective medical evidence by referring to his own previously cited record evidence. Accordingly, we find that the ALJ's determination that Dr. Bossert's opinion was inconsistent with other objective medical records was based on substantial evidence.").

Plaintiff, however, complains that the ALJ did not explain his basis for concluding that Nurse Diribe's physical limitations opinion was not supported because it was based primarily on Plaintiff's subjective complaints, arguing that "the *record as a whole* reveals that this [Nurse Diribe's diagnosis of chronic knee pain] is not just an allegation of subjective complaints."

25

*Plaintiff's Memorandum of Law*, ECF No. 9, p. 25 (emphasis added); *see also id.* at 25–26 (citing evidence that she believes supports her argument) (citations omitted); *Plaintiff's Reply Brief*, ECF No. 12, pp. 5–6. The Court disagrees. To the extent that Plaintiff relies on Nurse Diribe's diagnosis of chronic knee pain to support that provider's opined physical limitations, that reliance is unavailing, because "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Although Plaintiff urges the Court to consider "the record as a whole[]" to establish the supportability of this opinion, "'supportability relates to the extent to which a medical source has articulated support for the medical source's opinion, while consistency relates to the relationship between the medical source's opinion and other evidence within the record.'" *Roby v. Kijakazi*, No. CV 22-1886, 2024 WL 197438, at *7 (W.D. Pa. Jan. 18, 2024) (quoting *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 n.2 (W.D. Pa. Jan. 25, 2023)) (cleaned up). As detailed above, the ALJ correctly noted that Nurse Diribe's opinion regarding Plaintiff's physical limitations contained no supporting discussion. R. 38, 557–58. *See Roby*, 2024 WL 197438, at *8 (finding that opinion, "rendered by checkmarks accompanied by plaintiff's diagnoses and a statement to 'see above clinical and medical findings[,]' "lacked supportability" as "this kind of cursory documentation is not a supporting explanation").

In also attacking the ALJ's consideration of the consistency of Nurse Diribe's physical limitations opinion, Plaintiff contends that the ALJ's finding that Plaintiff's knee impairment

improved following surgery was "an improper mischaracterization of the evidence." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 26; *see also Plaintiff's Reply Brief*, ECF No. 12, p. 5. Plaintiff refers to evidence that she believes supports her argument in this regard. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 26–27 (citations omitted). However, and without repeating the ALJ's detailed consideration of the evidence outlined above, the Court cannot agree that the ALJ improperly characterized the evidence when finding that Plaintiff's "knee condition improved after surgery and with physical therapy, with good right knee range of motion and an ability to claim [sic] stairs[.]" R. 38.

Plaintiff's citations to other record evidence is equally unavailing. Plaintiff points to evidence that, in September 2021, "she complained of difficulty with daily activities, ambulating, and with transfers"; that, on September 21, 2021, she tripped "and landed hard on the right of her post-surgical knee"; and that, on assessment, "it was noted she required skilled therapy to restore her prior level of function." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 27 (citing R. 576–77). As an initial matter, this Court has already explained that Plaintiff's reliance on subjective complaints in medical records will not transform those complaints into objective findings or a medical opinion. *See Hatton*, 131 F. App'x at 879. Moreover, the ALJ also explained why the record evidence did not fully support Plaintiff's subjective statements, R. 33–35, a credibility determination that Plaintiff apparently does not challenge. Plaintiff simply points to this evidence without explaining how such evidence supports her allegation that the ALJ mischaracterized the evidence. *See Plaintiff's Memorandum of Law*, ECF No. 9, p. 27; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an

unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). In any event, while it is true that the record reflects that Plaintiff's fall on her knee in September 2021 required skilled therapy to "restore her prior level of function[,]" Plaintiff fails to mention that the record also reveals that Plaintiff showed "improved ROM [range of motion]" and that she "tolerated session with verbal reported improved gait and . . . pain[.]" R. 577. Accordingly, Plaintiff has not persuaded this Court that the ALJ mischaracterized the evidence or otherwise committed reversible error when assessing Nurse Diribe's opinions.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Nurse Diribe's opinions.

## B.    Step Five Determination

Plaintiff also challenges the ALJ's determination at step five of the sequential evaluation process, arguing that the RFC precludes the jobs identified by the vocational expert and ultimately relied upon by the ALJ. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 12–14; *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–3. For the reasons that follow, Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike at the first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)).

"'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218).

In the case presently before the Court, the relevant hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 32–33, 74−75. The vocational expert responded that the jobs of mail clerk, cashier II, and information clerk would be appropriate for such an individual. R. 75−76. Plaintiff now challenges this testimony, arguing that the inclusion in the RFC of a limitation to simple, routine tasks and the ability to make simple work-related decisions is inconsistent with the definitions in the Dictionary of Occupational Titles ("DOT")[6] of mail clerk and cashier II, which require reasoning level 3,[7] and the job of information clerk, which requires reasoning level 4.

---

[6] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

[7] "The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id*. "GED is broken into three categories: (1) reasoning development, (2)

*Plaintiff's Memorandum of Law*, ECF No. 9, pp. 12−14; *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–3. However, the United States Court of Appeals for the Third Circuit has held that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618. In *Zirnsak*, the ALJ found that the claimant, who was limited to simple and routine work, was capable of performing jobs that required level 3 reasoning. *Id*. at 610, 617. The Third Circuit concluded that substantial evidence supported the ALJ's determination that the claimant could perform jobs that required that reasoning level, explaining as follows:

> First, . . . [the claimant] does not seriously argue that she is incapable of performing
> the jobs—order clerk, charge account clerk, or telephone quotation clerk—

---

mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id*. (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id*. Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*. Reasoning level 4 applies "principles of rational systems [such as bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation] to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists[] [and] [i]nterpret[s] a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Id*.

"SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id*. (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)−(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id*. at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

recommended by the VE. The record establishes that [the claimant] could perform these jobs. [She] completed tenth grade and testified that she received her GED or further education. . . . [The claimant] also had previous experience working as both a clerk and a bookkeeper. . . . Further, the "objective medical record [was deemed] unsupportive of the claimant's allegations of disabling mental impairments.". . . At numerous evaluations during the relevant period, [the claimant] was noted to be "oriented," "calm," and "psychologically appropriate." . . . She received only conservative treatment—primarily medication—during the relevant period. . . . Finally, [the claimant's] own account of her daily activities was "relatively full and independent."

Second, . . . [the claimant's] counsel did not identify any inconsistencies between the VE's testimony and the DOT at her hearing. . . . In fact, [the claimant's] counsel did not question the VE regarding inconsistencies at all. . . . Finally, . . . the occupations listed by the VE were only "a couple examples" of jobs available to [the claimant].

*Id*. at 618–19 (citations omitted).

Similarly, in the present case, the Court is not persuaded that Plaintiff seriously argues that she is incapable of performing the jobs of mail clerk or cashier II. Plaintiff has at least a high school education. R. 40. Mental status examinations revealed, *inter alia*, that Plaintiff had appropriate affect, normal speech, logical through process, fully oriented cognition, intact memory, good concentration and focus, calm and cooperative attitude, and fair to good or normal insight and judgment. R. 36. Plaintiff's mental health treatment was routine, consisting of medication and counseling with no need for emergency or inpatient treatment. *Id*. The ALJ also found that the extent of Plaintiff's activities of daily living, including, *inter alia*, driving a car, shopping in stores and by computer, socializing daily, reading and doing puzzles as hobbies, and handling personal finances, was inconsistent with plaintiff's allegations of extreme limitations in her mental functioning. R. 34. In addition, Plaintiff's counsel did not object to the vocational expert's testimony nor did he otherwise identify a conflict between such testimony and the DOT. *See generally* R. 74–79. Moreover, the jobs of both mail clerk and cashier II are classified as SVP 2 or "unskilled," "which suggests that the jobs require minimal reasoning ability[.]" *Jean-*

*Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691, 2017 WL 4316880, at *7 (D.N.J. Sept. 28, 2017); *see also* 20 C.F.R. §§ 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."), 416.968(a) (same). In short, the Court is not persuaded that remand is required on this basis.[8]

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 14, 2024                                  *s/Norah McCann King*
                                                         NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff's reliance on *Scott R. v. Kijakazi*, No. 1:21-CV-19519, 2022 WL 17352238, at *9 (D.N.J. Nov. 30, 2022), does not militate a different result. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 13–14 (citing *Scott R.*, 2022 WL 17352238); *Plaintiff's Reply Brief*, ECF No. 12, pp. 2–3 (same). While Plaintiff urges this Court to consider that her arguments are "colorable" under *Scott R.*, she concedes that the court in *Scott R.* did not reach the issue of whether an RFC for only simple or repetitive tasks would preclude, or is inconsistent with, an ability to perform jobs requiring a reasoning level 3.